# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00354-COA

**ABDULKHALIQ MOHAMMED MURSHID**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI, EX REL. MISSISSIPPI**                    **APPELLEE**
**BUREAU OF NARCOTICS**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2017 |
| TRIAL JUDGE: | HON. JUSTIN MILLER COBB |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | P. SHAWN HARRIS |
| ATTORNEY FOR APPELLEE: | ALLISON WALKER KILLEBREW |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 05/08/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., CARLTON AND WESTBROOKS, JJ.

### LEE, C.J., FOR THE COURT:

¶1.     In this forfeiture case, we must determine whether the trial court's decision to grant the State's complaint for forfeiture is supported by substantial evidence.

### PROCEDURAL HISTORY

¶2.     On July 9, 2015, Abdulkhaliq Murshid was arrested for violating the Uniform Controlled Substances Law.[1]   Mushid was indicted for possession with intent to sell more than 200 grams of synthetic cannabinoids, a/k/a "spice," a Schedule I controlled substance.[2]

---

[1]   *See* Miss. Code Ann. §§ 41-29-101 to -191 (Rev. 2013 & Supp. 2017).

[2]   At the time of the forfeiture hearing in January 2017, the criminal charges against Murshid were still pending.

*See* Miss. Code Ann. § 41-29-139 (Supp. 2017). Due to the quantity involved, the charge qualifies as drug trafficking and carries a minimum sentence of ten years' imprisonment, a maximum sentence of forty years' imprisonment, and a fine of up to one million dollars. § 41-29-139(f). The State filed a complaint for forfeiture in the Lauderdale County Circuit Court, seeking certain property belonging to Murshid, including $227,278.26 in U.S. currency, two guns, a digital video recorder, a DVD player, and a computer tablet. Murshid filed a response arguing that the property was not subject to forfeiture. After a hearing, the trial court granted the State's request as to $131,729.26. The trial court denied the State's request as to the remainder of the currency ($95,549) and the property.

¶3. Murshid now appeals, arguing that the trial court erred by finding $131,729.26 was subject to forfeiture.

## FACTS

¶4. On July 9, 2015, the Mississippi Bureau of Narcotics (MBN) executed a search warrant at the Meridian Tobacco Store, located at 4501 8th Street in Meridian, Mississippi. Murshid owned the store and operated it with his wife Susan. It was formerly named Chimney Tobacco Store and had been at a different location (5300 5th Street). The record is not clear when the store moved and changed names, but, prior to and after the store's name and location change, MBN agents made eight controlled buys at Chimney Tobacco and two controlled buys at Meridian Tobacco. According to the search warrant, all ten controlled buys occurred between July 30, 2014 and July 8, 2015.

¶5. That same day MBN agents went to Grey Cloud Discount Tobacco Store, located at

2

2012 Highway 45 North, to arrest Murshid. Murshid also owned Grey Cloud and several other stores in Meridian. Murshid was not at the store, but an MBN agent witnessed what he suspected were synthetic cannabinoids for sale. Another agent, Will Peterson, responded to the store to further investigate. Ultimately, Agent Peterson obtained a search warrant for Grey Cloud. During the search of Grey Cloud, agents discovered synthetic cannabinoids in a drawer near the cash register and in boxes in the office. Approximately 180 packages of suspected synthetic cannabinoids were seized. The agents also discovered the following in the office: approximately $28,000 in cash dispersed throughout several plastic bags; approximately $5,600 in cash locked in the office desk; $191,951 in cash locked inside a safe in the office; two guns; and various pieces of electronic equipment. At the forfeiture hearing, Agent Peterson testified that the items seized were in close proximity to the synthetic cannabinoids.

¶6. Murshid claimed that he thought the drugs were herbal incense and that his wife was responsible for ordering them. Murshid testified that $95,549 of the cash in the safe had been returned to him by the Drug Enforcement Agency in 2014. Murshid further testified that the remaining cash in his office was from his stores' earnings and his savings. He stated that he did not trust banks and would put the cash in his bank accounts as needed to cover business transactions and expenses.

**STANDARD OF REVIEW**

¶7. Our standard of review in forfeiture cases is as follows:

Forfeiture statutes are penal in nature and must be strictly construed. In a civil forfeiture case, the question is whether, given all of the evidence taken

3

together, a rational trier of fact could have found that the funds were the product of or the instrumentalities of violations of the State's Uniform Controlled Substances Laws. The trier of fact may act on circumstantial evidence and inferences as well as direct evidence.

*Evans v. City of Aberdeen*, 925 So. 2d 850, 853 (¶11) (Miss. Ct. App. 2005) (internal citations omitted). Our precedent further establishes that "[t]he appropriate standard of review in forfeiture cases is the familiar substantial evidence/clearly erroneous test. [The appellate court] will not disturb a circuit court's findings unless it has applied an erroneous legal standard to decide the question of fact." *Six Thousand Dollars ($6,000) v. State ex rel. Miss. Bureau of Narcotics*, 179 So. 3d 1, 4 (¶4) (Miss. 2015) (citation omitted).

## DISCUSSION

¶8. In his only issue on appeal, Murshid argues that the $131,729.26 was not in close proximity to the controlled substance and, as a result, the trial court erred by finding it was subject to forfeiture. Murshid contends that he met his burden to rebut the presumption that the money was forfeitable.

¶9. Mississippi Code Annotated section 41-29-153(a)(7) (Supp. 2017) states, "All monies, coin and currency found in close proximity to forfeitable controlled substances . . . are presumed to be forfeitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption." "Close proximity has not been strictly defined, but is instead understood to mean 'very near.'" *Twenty Thousand Eight Hundred Dollars ($20,800.00) in U.S. Currency v. State ex rel. Miss. Bureau of Narcotics*, 115 So. 3d 137, 142 (¶23) (Miss. Ct. App. 2013) (citing *Jones v. State ex rel. Miss. Dep't of Pub. Safety*, 607 So. 2d 23, 29-30 (Miss. 1991)).

4

¶10. In *One (1) Charter Arms, Bulldog 44 Special, Serial No. 794774 v. State ex rel. Moore*, 721 So. 2d 620, 624-25 (¶19) (Miss. 1998), our supreme court adopted a test to determine whether a forfeiture is lawful. We look to the following four elements:

> (1) [t]he nexus between the offense and the property and the extent of the property's role in the offense;
> (2) [t]he role and culpability of the owner;
> (3) [t]he possibility of separating the offending property from the remainder; and
> (4) [w]hether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the crime or grossly disproportionate to the culpability of the owner.

*Id.* at 625 (¶19) . "Essentially, the first three elements ensure a sufficiently close relationship between the property and the illegal activity. The fourth element protects offenders from forfeitures that are grossly disproportionate to the offense." *Lewis v. State*, 199 So. 3d 1245, 1251 (¶12) (Miss. 2016) (citation omitted).

¶11. All of the money seized was found in Grey Cloud's office near a large quantity of synthetic cannabinoids. However, Murshid argues that the money seized was from a legitimate source of income, namely several businesses he owned in the area. To support his argument, Murshid submitted financial records, including tax returns and statements of assets and liabilities from several stores. The trial court, noting the above four elements, found that Murshid failed to rebut the presumption. The trial court found Murshid's testimony was unpersuasive, specifically stating that his testimony "was contradictory and not plausible." The trial court noted that Murshid presented a "maze of financial records, including statements of assets from various convenience stores and tax returns," but that upon questioning, Murshid "could only generally answer questions related to the substantive

5

contents of the financial records."

¶12. Murshid testified that he gave the financial information to his CPA, Angie Shirley, and she prepared the financial documents. The trial court found inconsistencies within the documents, noting that the only exhibit with Shirley's name attached includes a letter from Shirley stating that "Management has elected to omit substantially all of the disclosures ordinarily included in financial statements prepared with the income tax basis of accounting." And the statements of assets for two other stores Murshid purportedly owned listed someone besides Murshid as the sole owner—Gas & Go and Smokers Express each listed Mohamed Hamood Mozip as the sole member of the LLC. Furthermore, Murshid stated that he gave the Chimney Tobacco store to his wife in 2013, well before the store changed its name and location. However, Murshid admittedly never legally transferred the business to his wife. Regardless, evidence indicated that out of the ten controlled buys at Chimney Tobacco and Meridian Tobacco between July 30, 2014 and July 8, 2015, the confidential informant purchased synthetic cannabinoids from Murshid himself six times, indicating Murshid's complicity. These controlled buys ultimately led the MBN agents to Grey Cloud where the money and additional synthetic cannabinoids were found.

¶13. The trial court determined that the only money Murshid proved was not subject to forfeiture was the $95,549 previously returned to him by the DEA. The trial court stated the quantity of synthetic cannabinoids indicated its use for sale, and as such, Murshid's reasons for having a large quantity of cash were "not plausible when taking the entirety of the evidence and testimony in consideration."

¶14. Lastly, the trial court concluded that the forfeiture did not divest Murshid of property with a value grossly disproportionate to the crime or to his culpability. The $131,729.26 in cash is minor when compared to the maximum $1,000,000 fine that could be imposed. This forfeited amount of cash is not grossly disproportionate to Murshid's crime or to his culpability.

¶15. Mindful of our standard of review, we cannot find the trial court erred in finding $131,729.26 was subject to forfeiture. This issue is without merit.

¶16. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**